UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EXECUTIVE PARK PARTNERS LLC,

                Plaintiff,

        -against-

BENICCI INC.,

                Defendant.

Civil Action No. 22-cv-02560 (PMH)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

**POLLACK LAW, P.C.**
225 Broadway, Suite 850
New York, New York 10007
Phone: (212) 765-5225
Fax: (929) 529-8562
Steve@stevepollacklaw.com

*Attorneys for:*
*Defendant Benicci Inc.*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................**8**

**BACKGROUND** ...........................................................................................................**9**

    (A)  Plaintiff's Unauthorized Sale of Benicci Products Through Walmart.......................9

    (B)  Plaintiff's Allegations Regarding Benicci ..................................................10

    (C)  Plaintiff Files the Instant Suit.................................................................11

**ARGUMENT** ..............................................................................................................**11**

    I.  THE COURT LACKS SUBJECT MATTER JURISDICTION ....................................11

    (A)  The Court Lacks Federal Question Jurisdiction.........................................12

    (B)  The Court Lacks Diversity Jurisdiction ...................................................13

    II.  THE COURT LACKS PERSONAL JURISDICTION OVER BENICCI ....................14

    (A)  Standard Under FRCP 12(b)(2) .............................................................14

    (B)  The Court Lacks "General" Personal Jurisdiction Over Defendant .........................15

    (C)  Plaintiff Alleges Only a Conclusory, Contradicted Basis for Jurisdiction...............15

    (D)  The Court Lacks "Specific" Personal Jurisdiction Over Defendant.......................16

    III.  THE FAC FAILS TO STATE A CAUSE OF ACTION ............................................23

    (A)  Plaintiff Has No Cognizable Claim for Defamation.................................23

    (B)  Plaintiff's Tortious Interference Claim Fails ...........................................29

    (C)  Plaintiff's Unfair Competition Claim Fails as a Matter of Law...............................30

    IV.  ATTORNEYS' FEES SHOULD BE AWARDED TO DEFENDANT .....................31

**CONCLUSION** ...........................................................................................................**32**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n,*
  2021 U.S. App. LEXIS 37514, at \*14 (2d Cir. 2021) ...........................................................13

*Anchor v. Novartis Grimsby, Ltd.,*
  282 F. App'x 872, 874 (2d Cir. 2008) ...................................................................................14

*Arbaugh v. Y & H Corp.,*
  546 U.S. 500, 514 (2006) .......................................................................................................11

*Aronson v. Wiersma,*
  65 N.Y.2d 592 (1985).............................................................................................................25

*AVRA Surgical Robotics, Inc. v. Gombert,*
  41 F.Supp.3d 350 (S.D.N.Y. 2014) ...........................................................................18, 20, 21

*Big Birds, LLC v. CC Beauty Collection, Inc.,*
  Civ. Action No. GLR-19-3594, 2020 U.S. Dist. LEXIS 156313 (D. Md. 2020)..........8, 16, 18

*Brown v. Maxwell,*
  929 F.3d 41 (2d Cir. 2019) .....................................................................................................28

*Cantor Fitzgerald, L.P. v. Peaslee,*
  88 F.3d 152 (2d Cir. 1996) .....................................................................................................19

*Careful Shopper, LLC,*
  No. 1:18-cv-03019-RJD-RML (ECF 40) .............................................................8, 16, 18, 19

*CDC Newburgh Inc. v. STM Bags, LLC,*
  22-cv-01597 (S.D.N.Y. 2021) ................................................................................................32

*Chau v. Lewis,*
  771 F.3d 118 (2d Cir. 2014) ...................................................................................................23

*Chufen Chen v. Dunkin' Brands, Inc.,*
  954 F.3d 492 (2d Cir. 2020) ...................................................................................................15

*Cisco Sys. v. Dexon Comput., Inc.,*
  No. 20-cv-04926-CRB, 2021 U.S. Dist. LEXIS 236322 (N.D. Cal. 2021) ...........................12

*Common Cents Distribs., LLC v. Curls Beauty Brands, LLC,*
  No. 20-cv-10369 (CM), 2021 U.S. Dist. LEXIS 175904 (S.D.N.Y. 2021) .................8, 16, 18

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.,*
    551 F. Supp. 3d 320 (S.D.N.Y. 2021) ................................................................. 23

*Davis v. Power of Auth. of N.Y.,*
    No. 19-CV-792 (KMK), 2022 U.S. Dist. LEXIS 20126 (S.D.N.Y. 2022) ........................... 28

*DiCoby v. Syracuse Univ.,*
    191 A.D.3d 425 (1st Dep't 2021) ...................................................................... 25

*Fernandez v. GM Fin. Co.,*
    No. 20-cv-09294 (NSR), 2022 U.S. Dist. LEXIS 54370 (S.D.N.Y. 2022) ......................... 14

*Ferring B.V. v. Serenity Pharm., LLC,*
    2019 U.S. Dist. LEXIS 129044 (S.D.N.Y.  2019) ................................................... 13

*Front, Inc. v. Khalil,*
    24 N.Y.3d 713 (2015) ................................................................................... 29

*Gertz v. Robert Welch,*
    418 U.S. 323 (1974) .................................................................................... 27

*Godoy v. BMW of N. Am., LLC,*
    No. 16-CV-5502(DRH)(SIL), 2018 U.S. Dist. LEXIS 164195 (E.D.N.Y. 2018) ........... 14, 15

*Guccione v. Hustler Magazine, Inc.,*
    800 F.2d 298 (2d Cir. 1986) ........................................................................... 26

*Gunst v. Seaga,*
    2007 U.S. Dist. LEXIS 25257 (S.D.N.Y. 2007) ..................................................... 12

*Hargrave v. Oki Nursery, Inc.,*
    636 F.2d 897 (2d Cir. 1980) ........................................................................... 20

*Harris v. Am. Accounting Ass'n,*
    No. 5:20-CV-01057 (MAD/ATB), 2021 U.S. Dist. LEXIS 226517 (N.D.N.Y. 2021) ......... 32

*IQ Dental Supply, Inc. v. Henry Schein, Inc.,*
    *924 F.3d 57 (2d Cir. 2019)* ........................................................................... 30

*ITC Ltd. v. Punchgini, Inc.,*
    9 N.Y.3d 467 (2007) .................................................................................... 31

*Johnson v. Ward,*
    4 N.Y.3d 516 (2005) .................................................................................... 17

*Lo v. AT&T Servs.,*
    No. 3:17-CV-00401 (JCH), 2018 U.S. Dist. LEXIS 13469 (D. Conn. 2018) ..................... 14

*Madison Capital Markets, LLC,*
    2016 U.S. Dist. LEXIS 112687 (S.D.N.Y. 2016) ......................................................21, 22, 23

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000) ...................................................................................................12

*Marom v. Gordon,*
    2020 U.S. Dist. LEXIS 8763 (S.D.N.Y. 2020) .......................................................................24

*Mednik v Specialized Loan Servicing, LLC,*
    No. 20-CV-427 (MKB), 2021 U.S. Dist. LEXIS 34059 (EDNY 2021) ..............................20

*Mende v. Milestone Tech., Inc.,*
    269 F. Supp. 2d 246 (S.D.N.Y. 2003) ....................................................................................15

*Metro. Life Ins. Co.,*
    84 F.3d 560, 567 (2d Cir. 1996) .............................................................................................21

*Modellbahn Ott Hobbies, Inc. v. Velcro USA, Inc.,*
    2021 U.S. Dist. LEXIS 95981 (S.D.N.Y. 2021) ..........................................................8, 16, 18

*Morsy v. Pal-Tech, Inc.,*
    2008 U.S. Dist. LEXIS 59804 (S.D.N.Y. 2008) .....................................................................19

*Otter Products LLC v. CDC Newburgh Inc.,*
    Case No. 18-cv-3194, DE 1 (D. Col. 2018) .........................................................................9, 12

*Ousmane Bah v. Apple Inc.,*
    2020 U.S. Dist. LEXIS 22867 (S.D.N.Y. 2020) ....................................................................17

*Pankova-Visser v. Walmart, Inc.,*
    No. 1:20-CV-430 (MAD/DJS), 2020 U.S. Dist. LEXIS 96343 (N.D.N.Y. 2020).................10

*Paterno v. Laser Spine Inst.,*
    24 N.Y.3d 370 (2014).............................................................................................................21

*Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin I"),*
    609 F.3d 30, 35 (2d Cir. 2010) ..............................................................................................20

*Real Selling Grp. LLC v. ESN Grp., Inc.,*
    2021 U.S. Dist. LEXIS 27451 (S.D.N.Y. 2021) .................................................................8, 18

*RFP, LLC v. SCVNGR, Inc.,*
    788 F. Supp. 2d 191 (S.D.N.Y. 2011) ....................................................................................30

*Rosenberg v. Metlife, Inc.,*
  8 N.Y.3d 359 (2007)..............................................................................28

*Rosner v. Amazon.com,*
  132 A.D.3d 835 (2d Dep't 2015)..........................................................23

*Saleh v. Sulka Trading, Ltd.,*
  957 F.3d 348 (2d Cir. 2020) ...........................................................12, 13

*Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.,*
  No. 17-cv-1674 (SJF) (ARL), 2021 U.S. Dist. LEXIS 64504 (E.D.N.Y. 2021)....................30

*Simpri v. Remillard,*
  No. 22-CV-03531 (PMH), 2022 U.S. Dist. LEXIS 80330 (S.D.N.Y. 2022) .........................14

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n,*
  18 N.Y.3d 400 (2012)..............................................................................17

*Supercom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.,*
  2022 U.S. Dist. LEXIS 29184 (S.D.N.Y. 2022) ......................................25

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
  864 F.3d 236 (2d Cir. 2017) ...............................................................26

*TD Bank, N.A. v. Hill, No. 12-7188 (RBK/JS),*
  2014 U.S. Dist. LEXIS 13519 (D.N.J. 2014) ........................................28

*Tenet Sols., LLC v. Amberstone Enters. LLC,*
  No. 21-80649-CIV-CAN, 2021 U.S. Dist. LEXIS 145427 (S.D. Fla. 2021)........................24

*Tiffany (NJ) Inc. v. eBay, Inc.,*
  576 F. Supp. 2d 463 (S.D.N.Y. 2008) ...................................................29

*Trisvan v. Regal Entm't Grp.,*
  No. 21-CV-187 (MKB), 2021 U.S. Dist. LEXIS 138840 (E.D.N.Y. 2021) .........................14

*Troma Entm't, Inc. v. Centennial Pictures Inc.,*
  729 F.3d 215 (2d Cir. 2013).................................................................20

*Unlimited Cellular v. Copper Compression LLC,*
  No. 22-cv-01400-VB (S.D.N.Y. 2022) .................................................32

*Unlimited Cellular v. Red Points Solutions SL,*
  No. 21-cv-10638-NSR (S.D.N.Y. 2021) ..............................................32

*Verragio, Ltd. v. Malakan Diamond Co.,*
    2016 U.S. Dist. LEXIS 150689 (S.D.N.Y. 2016) ...................................................20

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014) ...........................................................................................22

*Whitaker v. Am. Telecasting, Inc.,*
    261 F.3d 196 (2d Cir. 2001) ............................................................................15, 20

*Zappin v. Daily News, L.P.,*
    2017 U.S. Dist. LEXIS 125959 (S.D.N.Y. 2017) ...................................................25

## STATUTES

28 U.S.C. § 1332(a) ...............................................................................................................13

New York Civil Rights Law § 70-a ..............................................................................8, 27, 31

## RULES

New York Civil Practice Law and Rules § 302(a)(1) ........................................................16, 17

New York Civil Practice Law and Rules § 302(a)(2) ..............................................................19

New York Civil Practice Law and Rules § 302(a)(3) ....................................................19, 20, 21

Federal Rule of Civil Procedure 12(b)(2) ...............................................................................14

## CONSTITUTIONAL PROVISIONS

Due Process Clause of the Fourteenth Amendment ...................................................................21

Defendant Benicci Inc. ("**Benicci**" or "**Defendant**") submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint (ECF No. 13) (the "**FAC**") filed by Plaintiff Executive Park Partners LLC (**"Plaintiff"**) pursuant to Rules 12(b)(1)-(2) and (6) of the Federal Rules of Civil Procedure ("**FRCP**") for lack of subject matter and personal jurisdiction, and for failure to state a claim.

## PRELIMINARY STATEMENT

In this bizarre case, a burglar sues a homeowner for calling the police. Specifically, Plaintiff, without authority, offered Defendant's branded products for sale through a deceptive and spurious online listing; Defendant requested that the online marketplace investigate; Plaintiff now sues Defendant for doing so. There is no justiciable controversy or adequate amount in controversy; Plaintiff sold less than $100 worth of merchandise, if any, on the spurious listing. Moreover, Defendant Benicci is a Florida company with Florida operations and no connection to New York, and the online marketplace is Walmart.com, operated by an Arkansas company. As courts in this district have held time and time (and time) again, this Court does not have personal jurisdiction over an out-of-state brand that merely complains to a marketplace about an unauthorized reseller.[1] Plaintiff's claims also lack merit. The defamation claim should be dismissed because Plaintiff does not plead, and cannot prove, an actionable statement, falsity, the requisite fault, or damage. Moreover, the alleged statements are protected by the litigation and self-interest privileges. Plaintiff's other claims fail for similar reasons. Plaintiff's Complaint must be dismissed with prejudice, and attorneys' fees should be awarded to Benicci under New York's amended anti-SLAPP law. *See* N.Y. Civ. Rights Law §§ 70-a, 76-a.

---

[1] *Common Cents Distribs., LLC v. Curls Beauty Brands, LLC*, No. 20-cv-10369 (CM), 2021 U.S. Dist. LEXIS 175904, at *11 (S.D.N.Y. Sep. 15, 2021); *Modellbahn Ott Hobbies, Inc. v. Velcro USA, Inc.*, 2021 U.S. Dist. LEXIS 95981, at *8 (S.D.N.Y. May 20, 2021); *Real Selling Grp. LLC v. ESN Grp., Inc.*, 2021 U.S. Dist. LEXIS 27451, at *1 (S.D.N.Y. Feb. 12, 2021); *see also Big Birds, LLC v. CC Beauty Collection, Inc.*, Civil Action No. GLR-19-3594, 2020 U.S. Dist. LEXIS 156313, at *10 (D. Md. Aug. 28, 2020); *Careful Shopper, LLC v. TPLink USA Corp., et al.*, No. 1:18-cv-03019-RJD-RML (E.D.N.Y. 2018) (ECF 40). Copies of the aforementioned cases are attached to the Pollack Declaration being submitted herewith as Exhibits 1-5.

**BACKGROUND**

(A) **Plaintiff's Unauthorized Sale of Benicci Products Through Walmart.com**

Plaintiff resells branded products on retail websites such as Amazon.com and Walmart.com. (FAC, ¶7.) It does so by creating spurious listings that misappropriate copyrighted product images and brand trademarks. (*See* Declaration of Vladimir Kozhedub being submitted herewith ("**Kozhedub Dec.**"), at ¶¶5-8, 11-15; *Otter Products LLC v. CDC Newburgh Inc.*, Case No. 18-cv-3194, DE 1 (D. Col. 2018) (charging Plaintiff's affiliated entities with the "unlawful and unauthorized advertisement and sale of OtterBox®- and LifeProof®-brand products on the Internet, including the sale of defective, damaged, used, and poor quality products bearing the [subject] marks.") By design, consumers who believe they are ordering a product directly from the brand are duped into ordering from Plaintiff. (*Id*. at ¶¶14, 29.) To make matters worse, consumers are tricked into paying over 220% more for the same product when buying through Plaintiff's listings. (*Id*. at ¶15.) Not surprisingly, Plaintiff has no contractual relationship with the product brand or any authority to resell its products. (*See id*. at ¶18.) And unlike the brand, Plaintiff's online reviews are dismal. (*See id*. at ¶¶30-32.) Customers who order from Plaintiff routinely complain about late shipment or no shipment at all. (*See id*.) Thus, Plaintiff's principal hops from one online account to another, selling under various aliases such as "Executive Accessories," "Plaza Accessories," "CDC Newburgh Inc.," and "Unlimited Cellular." (*See id*. at ¶¶32; *see also* Pollack Decl. at ¶¶7-8.)

Consistent with its *modus operandi*, in this case, Plaintiff attempted to pawn off its goods through an unauthorized listing on Walmart.com's online marketplace. Plaintiff's listing misappropriated Benicci's federally registered trademarks and copyrighted images without Benicci's knowledge or consent. (*See* Kozhedub Dec. at ¶¶4, 11-15.) The spurious online listing was designed to appear authentic to trick consumers into thinking it was created, authorized, and endorsed by Benicci. (*Id*.) But it was not.[2] (*Id*. at ¶¶16, 18-29.)

---

[2] In addition to being unlawful, Plaintiff's unauthorized listing violated Walmart's marketplace policies and rules from the outset. (*Id*. at ¶¶9-10, 20-21, 36-37.)

(B) **Plaintiff's Allegations Regarding Benicci**

Benicci is a Florida corporation with its principal place of business in Miami, Florida. (Compl., ¶2.) Benicci has no offices, employees, agents, phone numbers, property, bank accounts, operations, warehouses, inventory, or products in New York, and is not even authorized to do business in New York. (*See* Kozhedub Dec. at ¶2.)

Plaintiff alleges that on March 9, 2022, "a person identifying herself as Anna Tobin submitted a message to **Plaintiff** . . . in which she falsely accused Plaintiff of selling a counterfeit version of a Benicci [paint brush set]." (FAC, ¶17.) In response, **Plaintiff** removed its Brush Set listing from Walmart.com "out of concern that Defendant would make a false report to Walmart." (*Id.* at ¶18.) Plaintiff did not inform Anna Tobin or Benicci that it was selling authentic Benicci products at that time. Afterwards, according to the FAC, "Defendant submitted an intellectual property violation report to Walmart.com in which it accused multiple sellers, including Plaintiff, of selling counterfeit versions of the Brush Set." (*Id.* at ¶19.) The FAC alleges that Benicci reported the following:

> Sellers like these are shipping to buyers similar looking items, but they won't have our logo on the packaging, quality may be lower and the item they will ship will have different packaging as well. So they will sell under our listing and they will ship to buyer a different item.

According to the FAC, on March 20, 2022, Defendant submitted the same complaint to Walmart.com[3] regarding Plaintiff's listing offering Benicci Safe Tree-Swing Hanging-Kits ("**Swing Kit**"). (*Id.* at ¶20.) Benicci's complaint regarding Plaintiff's unauthorized Swing Kit listing, stated:

> Dear Walmart Team, We believe above sellers are engaging in fraudulent activity. Please investigate. This is a common way to mislead Walmart buyers. Sellers like these are shipping to buyers similar looking items, but they won't have our logo on the packaging, quality may be lower and the item they will ship will have

---

[3] Plaintiff does not contend that Walmart is located in New York. Walmart Inc. (NYSE: WMT) is a Delaware corporation headquartered in Bentonville, Arkansas. *See Pankova-Visser v. Walmart, Inc.*, No. 1:20-CV-430 (MAD/DJS), 2020 U.S. Dist. LEXIS 96343, at *3 (N.D.N.Y. June 2, 2020) ("Walmart's principal place of business is within the State of Arkansas").

different packaging as well. So they will sell under our listing and they will ship to buyer a different item. Please remove them from our listing since they don't have our permission to resell our product. Thank you very much for your help and consideration!

(Kozhedub Dec., ¶27) (the "**Investigation Request**").

In accordance with standard policy, on March 21, 2022, Walmart requested proof from Plaintiff that its sale of Benicci products was authorized, through, for example, sales records or an authorized distribution agreement. (*See* FAC, ¶11; Kozhedub Dec., ¶36.) Specifically, Olga, from the Walmart Trust & Safety department asked Plaintiff to present "documentation from a manufacturer," or "invoices/receipts from the supplier," either of which would have been "acceptable documents." (Kozhedub Dec., ¶36; Exhibit G.) Olga also requested that Plaintiff answer several questions as part of Walmart's investigation, including "Are you an authorized reseller for BENICCI?" (*Id*) Plaintiff refused to respond, leading Walmart to remove Plaintiff's Swing Kit listing. (FAC, ¶21; Kozhedub Dec., ¶37.)

Plaintiff voluntarily "removed all of its listings for the authentic Benicci items it had been selling on Walmart.com" based on its speculation that Walmart may suspend or permanently terminate its account. (FAC at ¶23.)

(C) **Plaintiff Files the Instant Suit**

On March 29, 2022, mere days after Plaintiff's listing was removed, Plaintiff filed suit. Plaintiff now asserts four causes of action: defamation (¶¶32-42), tortious interference (¶¶43-50), declaratory judgment of non-infringement (¶¶51-57), and unfair competition (¶¶58-60).

## ARGUMENT

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION

Subject matter jurisdiction is a threshold requirement that cannot be waived. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id*. "When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings,

such as affidavits." *Gunst v. Seaga*, 2007 U.S. Dist. LEXIS 25257, at *6 (S.D.N.Y. Mar. 30, 2007) (*citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

(A) **The Court Lacks Federal Question Jurisdiction**

Out of the FAC's four claims, three are based on state or common law. The sole count invoking federal law is Count III for declaratory judgment of non-infringement. To permit the exercise of federal jurisdiction based on such a claim, the FAC must allege a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests" and is "real and substantial," such that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Saleh v. Sulka Trading, Ltd.*, 957 F.3d 348, 353-54 (2d Cir. 2020).[4] In the trademark context, the plaintiff must plead "a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Id.* at 355.

First, Plaintiff relies on a purported "definite and concrete dispute" under the Lanham Act in connection with "Defendant's BENICCI trademark." (DE 16 at 1-2.) But the FAC does not identify any trademarks owned by Defendant, nor was there mention of any trademark in Defendant's Investigation Request to Walmart. (*See* FAC at ¶¶19-20.) Defendant's description of bait and switch tactics used by "[s]ellers *like* these" was not an assertion of "purported trademark rights." (*Id.*) Plaintiff's argument is unsupported by its own pleading.

Second, Plaintiff "appears to want a declaration that its sale of genuine [Benicci] products does not violate the Lanham Act." *Cisco Sys. v. Dexon Comput., Inc.*, No. 20-cv-04926-CRB, 2021 U.S. Dist. LEXIS 236322, at *24-25 (N.D. Cal. Dec. 9, 2021). "The Court lacks subject matter jurisdiction to issue a declaratory judgment as [to Plaintiff's] proposed contention because [Plaintiff] has no 'real and reasonable apprehension' of liability under the Lanham Act for selling genuine products." *Id.* at *25.

---

[4] Unless otherwise noted, all internal quotation marks and citations are omitted, and internal emphasis is added throughout.

Third, the FAC fails to plead a "definite intent and apparent ability" of Plaintiff "to commence use of the marks on [a] product." *Saleh*, 957 F.3d at 355. Plaintiff "removed all of its listings for the authentic Benicci items it had been selling on Walmart.com." (FAC, ¶23.) So Plaintiff has no listings. Plaintiff also has no product. Plaintiff alleges that it sold only authentic Benicci products it "for all intents and purposes obtained . . . directly from Defendant." (FAC, ¶27.) Thus, Plaintiff relies, for its source of product, on Benicci to supply it. Yet, Plaintiff does not plead any intent to continue buying or selling Benicci products, nor would it be able to because Benicci will not agree to sell its product to Plaintiff, a now known unauthorized reseller. *See Saleh*, 957 F.3d at 356-57. There is no issue for the Court to decide. Plaintiff's hypothetical sale of Benicci products at some unknown time in the future, *if* Plaintiff can even get its hands on Benicci products and *if* its unauthorized listings are reinstated does not present a justiciable controversy. *See, e.g.*, *Ferring B.V. v. Serenity Pharm., LLC*, 2019 U.S. Dist. LEXIS 129044, at *37 (S.D.N.Y. July 31, 2019).

Finally, even assuming an actual controversy exists, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary. *See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 2021 U.S. App. LEXIS 37514, at *14 (2d Cir. 2021). Here, regardless of the Court's ruling, Walmart cannot be compelled to reinstate Plaintiff's unauthorized listing, Defendant will not sell its products to Plaintiff, and Plaintiff's unauthorized resale of Defendant's products will continue to breach Defendant's terms of use. Thus, the Court's ruling to the extent it offers any resolve will not "finalize the controversy" between the parties. *Id.* Accordingly, the Court should decline to exercise declaratory judgment jurisdiction in this case.

(B) **The Court Lacks Diversity Jurisdiction**

Plaintiff sold, if anything, less than $100 of Benicci Swing Kit product before its unauthorized, spurious listing was found and taken down. (Kozhedub Dec., ¶34.) Far from federal court, Plaintiff's claims belong, if anywhere, in small claims court. To have a claim heard in federal court based on diversity jurisdiction, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). New York federal courts have held "[t]he amount in controversy must be

non-speculative to satisfy the statute, and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient." *Trisvan v. Regal Entm't Grp.*, No. 21-CV-187 (MKB), 2021 U.S. Dist. LEXIS 138840, at *14 (E.D.N.Y. July 26, 2021); *see also Simpri v. Remillard*, No. 22-CV-03531 (PMH), 2022 U.S. Dist. LEXIS 80330, at *5-6 (S.D.N.Y. May 3, 2022) (same in the removal context).

To be fair, some trial courts have held that amount-in-controversy allegations are presumed to be made in good-faith but "[w]here a party opposing jurisdiction makes [a contrary showing], a conclusory statement by a party that the amount in controversy is met is insufficient to support subject matter jurisdiction." *Fernandez v. GM Fin. Co.*, No. 20-cv-09294 (NSR), 2022 U.S. Dist. LEXIS 54370, at *6 (S.D.N.Y. Mar. 25, 2022). Other courts have held that no such presumption is warranted for a "boilerplate statement that the amount in controversy exceeds $75,000." *Lo v. AT&T Servs.*, No. 3:17-CV-00401 (JCH), 2018 U.S. Dist. LEXIS 13469, at *10 (D. Conn. Jan. 29, 2018) (listing cases).

Here, Plaintiff makes no attempt to support its boilerplate conclusion that "[t]he amount in controversy exceeds $75,000." (FAC, ¶3.) Indeed, the only time a dollar sign appears in the FAC is in that boilerplate statement. Defendant has disproved Plaintiff's boilerplate allegation. (Kozhedub Dec., ¶34.) Thus, the Court lacks diversity jurisdiction over this matter.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER BENICCI

### (A) Standard Under FRCP 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction brought pursuant to FRCP 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Anchor v. Novartis Grimsby, Ltd.*, 282 F. App'x 872, 874 (2d Cir. 2008). "Courts may rely on additional materials outside the pleading when ruling on a 12(b)(2) motion." *Godoy v. BMW of N. Am., LLC*, No. 16-CV-5502(DRH)(SIL), 2018 U.S. Dist. LEXIS 164195, at *7 (E.D.N.Y. Sep. 25, 2018). "The Court will not draw argumentative inferences in the plaintiff's favor, but will construe jurisdictional allegations liberally and take as true uncontroverted factual

allegations. Conclusory allegations are not enough to establish personal jurisdiction." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003); *see Godoy*, 2018 U.S. Dist. LEXIS 164195, at *8.

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state, in this instance New York. If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

(B) <u>**The Court Lacks "General" Personal Jurisdiction Over Defendant**</u>

The FAC does not allege – because it cannot – that the Court has general jurisdiction over Benicci. The parties agree that Benicci is not incorporated or headquartered in New York (FAC, ¶2), and is not otherwise "at home" in New York. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). Thus, Plaintiff must establish specific jurisdiction (*i.e.*, that its claims "arise out of" *Defendant's* New York conduct).

(C) <u>**Plaintiff Alleges Only a Conclusory, Contradicted Basis for Jurisdiction**</u>

The FAC devotes one conclusory paragraph to establishing personal jurisdiction. (FAC, ¶4.) The FAC expressly alleges, "[t]his is an action . . . arising out of Defendant's intentionally (sic) *falsely reporting to Walmart.com* that Plaintiff's products sold on that website were counterfeit." (FAC, ¶6; *see also id.* at ¶¶10-12, 15-24, 28-31, 33-42, 46, 54.) Thus, the FAC admits that this action arises out of a report made to Walmart.com. This case is all about, and Plaintiff's alleged damages all arise out of, a single comment, the Investigation Request, that Defendant (in Florida) made to Walmart (in Arkansas) about an online listing.

In pre-motion representations to this Court, Plaintiff's counsel switched focus and claimed that Plaintiff's claims arise out of Defendant's shipment of goods to New York. Plaintiff's argument is disingenuous. The FAC concedes that Defendant never shipped a product to Plaintiff (*id.* at ¶¶4, 27) and Plaintiff never shipped a product to Defendant (*id.* at ¶22). To the extent Plaintiff argues jurisdiction is proper because Defendant's complaint was allegedly about a product that Defendant ships to others, not Plaintiff, in New York, Plaintiff is misguided. Such

attenuation is a step too far. *See infra* at 16-22. Moreover, Defendant's complaint was directed at Walmart.com, and related to an unauthorized *listing*, not some general forum that can control Plaintiff's sale of goods generally. Once the listing went down, Defendant took no further action.

Plaintiff misframes the matter in hopes of avoiding the clear, consistent, and applicable precedent dismissing these types of unauthorized reseller cases, which were cited in pre-motion correspondence. *See, e.g.*, *supra* at n.1 (*citing Common Cents Distribs., LLC*, 2021 U.S. Dist. LEXIS 175904, at *11; *Modellbahn Ott Hobbies, Inc.*, 2021 U.S. Dist. LEXIS 95981, at *8; *Real Selling Grp. LLC*, 2021 U.S. Dist. LEXIS 27451, at *1; *Big Birds, LLC*, 2020 U.S. Dist. LEXIS 156313, at *10; *Careful Shopper, LLC*, No. 1:18-cv-03019-RJD-RML (ECF 40)). As discussed below, these cases are directly applicable and this case should be dismissed for lack of jurisdiction.

(D) **The Court Lacks "Specific" Personal Jurisdiction Over Defendant**

1. **There is no jurisdiction under CPLR § 302(a)(1) because any alleged New York contacts are unrelated to Plaintiff's claims**

CPLR § 302(a)(1) reads, in relevant part, as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary … who … transacts any business within the state or contracts anywhere to supply goods or services in the state[.]

To obtain personal jurisdiction under this provision of the long-arm statute, plaintiffs bear the burden of proving that: "(i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business." *Johnson v. Ward*, 4 N.Y.3d 516, 519 (2005).

In typical matters, a cause of action is deemed to arise from the transaction of business in New York when the cause of action has an "articulable nexus" or "substantial relationship" to the defendant's business within the state. *Id*. In defamation matters, however, the test is more stringent: "[I]n a defamation case, the second prong of section 302(a)(1) considers whether a concrete relationship exists between the defamatory statements and the New York activity as well as whether the defamatory statements were written in or directed to New York." *Ousmane*

*Bah v. Apple Inc.*, 2020 U.S. Dist. LEXIS 22867, at *12 (S.D.N.Y. Feb. 10, 2020) (*quoting SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 405 (2012)). This heightened pleading requirement reflects the legislature's desire "to treat the tort of defamation differently from other causes of action" with respect to long-arm jurisdiction, and its concern that "particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech . . . ." *SPCA of Upstate New York, Inc.*, 18 N.Y.3d at 405-06.

Here, Plaintiff alleges no connection between Benicci's alleged business transactions in New York and its alleged defamatory statements. To concoct some attenuated nexus, Plaintiff cooks up a theory that Defendant intended to restrict competition in New York or sought to prevent the sale of its products in New York, and that's why it complained about Plaintiff's spurious and unauthorized online listing. (FAC, ¶4.) Indeed, Plaintiff goes so far as to claim, "Defendant's sole reason for making the false report was ostensibly to prevent resale of its products and thereby increase its sales." (*Id*. at ¶6.) But these unsupported conclusions are belied by Plaintiff's other allegations that Plaintiff was sourcing its products from Defendant. (*See id*. at ¶¶6, 22, 27, 53, 55.) Thus, Defendant was getting the sale regardless. The FAC does not allege any basis for Defendant to have eschewed sales away from Plaintiff's undisclosed intermediary. The FAC also fails to allege facts concerning Defendant's knowledge of Plaintiff's New York activities. The FAC actually supports the opposite – defendant had no idea of Defendant's New York activities – since Plaintiff surreptitiously purchased Benicci products through an undisclosed intermediary. (*Id*. at ¶¶4, 27.)

The substantive allegations of the FAC reveal that this case is virtually identical to a long line of cases expressly rejecting claims like Plaintiff's brought by an unauthorized reseller against an out-of-state brand for complaints to online platforms, including: *Common Cents Distribs., LLC*, 2021 U.S. Dist. LEXIS 175904; *Modellbahn Ott Hobbies, Inc.*, 2021 U.S. Dist. LEXIS 95981; *Real Selling Grp. LLC*, 2021 U.S. Dist. LEXIS 27451 ("**Real Selling Group**");

*Big Birds, LLC*, 2020 U.S. Dist. LEXIS 156313; *Careful Shopper, LLC*, No. 1:18-cv-03019-RJD-RML (ECF 40) ("**Careful Shopper**").

In *Real Selling Group*, for example, a New York-based Amazon reseller sued a California-based manufacturer for allegedly falsely informing Amazon that the reseller's goods were counterfeit. In reasoning fully applicable here, the court dismissed for lack of personal jurisdiction, holding that the defendant's sales and other commercial activity in New York were "clearly insufficient" to support personal jurisdiction because those sales did not relate to the plaintiff's claims: "Here, [plaintiff's] claims arise out of alleged complaints made by [defendant] to Amazon (located in Washington) concerning [plaintiff's] own sales activities. [Defendant's] sales in New York have nothing to do with these claims." 2021 U.S. Dist. LEXIS 27451, at *14.

Likewise, in *Careful Shopper*, Judge Raymond Dearie of the Eastern District of New York also dismissed the complaint for lack of personal jurisdiction, finding that a California-based defendant's sale of product in New York could not support personal jurisdiction over claims arising from the defendant's allegedly false statements to Amazon that the plaintiff reseller's goods were counterfeit: "Plaintiff's claims do not arise from [Defendant's] supply of products to third-parties in New York or even from [Defendant's representative's] online purchases of those products — they arise from allegedly defamatory complaints sent from California to Washington-based Amazon, about [Plaintiff's] online marketing of [Defendant's] products in violation of [Defendant's] intellectual property rights." *See* Careful Shopper Order (Pollack Decl., Exhibit 5) at p.8.

The same is true here. The allegedly defamatory communications giving rise to Plaintiff's asserted claims were never published in New York, directed at New York, or transmitted through New York. Instead, Plaintiff alleges the complaints were sent from Florida-based Benicci to Arkansas-based Walmart. There is no link between Benicci's New York activity, if any, and the claims in this lawsuit.

### 2.  There is no jurisdiction under CPLR § 302(a)(3) because all of Plaintiff's claims sound in defamation

CPLR § 302(a)(3) is the section of the long-arm statute that extends specific personal jurisdiction over a defendant that commits a tortious act without the state causing injury to a person or property within the state. This section is unavailable as a basis for personal jurisdiction here, however, because all of Plaintiff's claims sound in defamation and that section of the long-arm statute is expressly inapplicable to defamation claims: "[A] court may exercise person jurisdiction over any nondomiciliary . . . [who] commits a tortious act without the state causing injury to person or property within the state, **except as to a cause of action for defamation of character arising from the act.**" CPLR § 302(a)(3) (emphasis added).

Courts "look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation," and "[p]laintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation." *Morsy v. Pal-Tech, Inc.*, 2008 U.S. Dist. LEXIS 59804, at **16-17 (S.D.N.Y. Aug. 7, 2008) (citations omitted) (tortious interference with contract claim sounds in defamation and §§ 302(a)(2) and (3) do not apply). Thus, so long as a plaintiff's claims are all "based upon [the same] alleged defamatory statements" such that the "entire complaint sounds in defamation," the defamation "exception" applies and CPLR § 302(a)(3) is unavailable as a basis for personal jurisdiction. *See Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996) ("claims of injurious falsehood and tortious interference with prospective economic advantage likewise do not independently establish personal jurisdiction under subparagraphs (2) and (3) because the entire complaint sounds in defamation.").

Here, all of Plaintiff's claims—defamation, tortious interference, declaratory judgment, and unfair competition—all sound in defamation because they each arise from Benicci's supposedly false statements to Walmart, which is the only actionable conduct alleged in the entire FAC.

**3.   There is also no jurisdiction under CPLR § 302(a)(3) because, *inter alia*, the site of any purported injury was not in New York**

Even if the Court were to determine that Plaintiff has successfully asserted a claim that does not sound in defamation, CPLR § 302(a)(3) would still not provide a basis for personal jurisdiction over Benicci because, *inter alia*, Plaintiff has not plausibly alleged any injury occurring in New York. "Under [CPLR § 302(a)(3)], the predicative determination ... is whether the Plaintiff's injury occurred, or was felt, within the State of New York." *Verragio, Ltd. v. Malakan Diamond Co.*, 2016 U.S. Dist. LEXIS 150689, at *7 (S.D.N.Y. Oct. 20, 2016) (*citing Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin I")*, 609 F.3d 30, 35 (2d Cir. 2010); *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 219 (2d Cir. 2013)).

As this Court has recognized, "[Section 302(a)(3)] requires as a predicate for personal jurisdiction a closer expectation of consequences within the State than the indirect loss of profits." *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F.Supp.3d 350, 361 (S.D.N.Y. 2014) (*quoting Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 900 (2d Cir. 1980)). "For decades, the Second Circuit has recognized that allegations of remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here are insufficient to support the exercise of jurisdiction over a non-domiciliary defendant." *Verragio, Ltd.*, 2016 U.S. Dist. LEXIS 150689, at *7-*8; *see also Mednik v Specialized Loan Servicing, LLC*, No. 20-CV-427 (MKB), 2021 U.S. Dist. LEXIS 34059, at *20 (EDNY Feb. 23, 2021) (listing cases); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York."). "[F]or claims involving a nonphysical, commercial injury, the situs of the injury is where the critical events associated with the dispute took place." *AVRA*, 41 F.Supp.3d at 361-62; *see also Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 381 (2014) ("[T]he situs of the injury ... is the location of the original event which caused the injury, and not where a party experiences the consequences of such injury.").

The alleged events giving rise to this case took place outside New York. Plaintiff's claim is not predicated on it purchasing items in New York, but rather upon statements Benicci, in Florida, allegedly made to Walmart, in Arkansas. The fact that Plaintiff's principal place of business is in New York "is merely a matter of fortuitous[] domicile[] rather than situs of injury." *AVRA*, 41 F.Supp.3d at 362. Consequently, the absence of injury in New York additionally precludes the exercise of personal jurisdiction over Benicci under Section 302(a)(3).

Consequently, Plaintiff has failed to meet its initial burden of establishing jurisdiction under New York's long arm statute. *See Metro. Life Ins. Co.*, 84 F.3d 560, 567 (2d Cir. 1996).

### 4. The Complaint Fails to Establish that the Exercise of Specific Jurisdiction Would Comport with Due Process

Even assuming *arguendo* that jurisdiction has been shown to be permissible under New York's long-arm jurisdiction - it has not - the Complaint must also demonstrate that the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Madison Capital Markets, LLC*, 2016 U.S. Dist. LEXIS 112687 at *30 (S.D.N.Y. Aug. 23, 2016). Due process requires that specific jurisdiction turn on whether "the defendant has purposefully directed his activities at ... the forum and the litigation arises out of or relates to those activities." *Id*. at *29. Additionally, a court must determine whether the assertion of personal jurisdiction comports with notions of "fair play and substantial justice." *Id*. at *30. The Complaint fails to show that due process is satisfied were the Court to exercise jurisdiction over Defendant.

With regard to the first component, a court must "focus[] on 'the relationship among the defendant, the forum, and the litigation'" to determine whether "the defendant's suit-related conduct...create[s] a substantial connection with the forum state." *Id*. (*quoting Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). The relationship between the defendant's conduct and the forum "must arise out of contact that [the] 'defendant himself creates with the forum'...[a]nd the 'minimum contact' analysis looks to the defendant's contacts with the forum...itself, not the defendant's contacts with persons who reside here.'" *Walden*, 134 S. Ct. at 1122. When the

alleged conduct occurred outside the forum, "the defendant must have intentionally caused - i.e., expressly aimed to cause - an effect in the forum through his conduct elsewhere." *Madison Capital Markets, LLC*, 2016 U.S. Dist. LEXIS 112687 at *30.

The Complaint concedes that Defendant is a Florida domiciliary, and fails to allege – because it cannot – that any of its shareholders reside in New York. (FAC, ¶2.) The only alleged wrongful conduct was the making of the Investigation Request in Florida to Walmart, in Arkansas. Moreover, the FAC fails to allege that Defendant had any basis to believe that its request to Walmart, in Arkansas, would affect a New York resident.

With regard to the second component, a court must determine whether the assertion of personal jurisdiction comports with notions of "fair play and substantial justice" by considering the following factors: (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Madison Capital Markets, LLC*, 2016 U.S. Dist. LEXIS 112687 at *30. In this regard, it is not reasonable to compel Defendant in this case, whose sole shareholder is domiciled outside of the United States, to travel repeatedly to New York when there is no jurisdictional nexus between it and New York - the burden of litigation in New York is plainly unreasonable in terms of time, travel, and money, and the FAC fails to demonstrate otherwise. Moreover, New York has little interest in the adjudication of the possible liability of a Florida entity for conduct undertaken in Florida. Nor are there any allegations (or conceivable arguments) that the interstate judicial system's interest in obtaining the most efficient resolution would be satisfied by a New York court exercising personal jurisdiction in these circumstances; or that the shared interest of the several States would be served. These factors all substantially outweigh the singular interest of Plaintiff in attempting to obtain relief against Defendant in New York. *Id*. at *31-32.

### III.    THE FAC FAILS TO STATE A CAUSE OF ACTION

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325 (S.D.N.Y. 2021). "Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Id*.

(A) **Plaintiff Has No Cognizable Claim for Defamation**

To state a claim for written defamation (*i.e.*, libel), a plaintiff must prove five elements: "(1) a written defamatory factual statement [of and] concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Chau v. Lewis*, 771 F.3d 118, 126-27 (2d Cir. 2014). "Falsity is a necessary element of a defamation cause of action and because only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 325-26 (*quoting Rosner v. Amazon.com*, 132 A.D.3d 835 (2d Dep't 2015)). "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

The only statements allegedly made by Defendant to a third-party are the March 10, 2022 report to Walmart.com regarding the Brush Set and the March 20, 2022 report to Walmart.com regarding the Swing Kit. (FAC, ¶¶19-20.) The March 10, 2022 report is not actionable as Plaintiff itself removed the Brush Set "out of concern that Defendant would make false reports to Walmart." (FAC, ¶18.) The March 20, 2022 report, referred to herein as the Investigation Request, is not actionable because it is non-actionable opinion, was substantially true, resulted in no actual damages, any damage sustained was self-inflicted, and was privileged.

23

1. **The FAC Does Not Allege an Actionable Statement of Fact**

The Investigation Request's first sentences, which were tellingly omitted from the FAC, lay bare what it was: a request to investigate suspected wrongdoing. The sentences read: "Dear Walmart Team, We believe above sellers are engaging in fraudulent activity. Please investigate." This is, at most, a legal opinion, not a factual statement. *See, e.g., Tenet Sols., LLC v. Amberstone Enters. LLC*, No. 21-80649-CIV-CAN, 2021 U.S. Dist. LEXIS 145427, at *22 (S.D. Fla. July 15, 2021); *Marom v. Gordon*, 2020 U.S. Dist. LEXIS 8763, at *23 (S.D.N.Y. Jan. 16, 2020). The FAC claims Defendant "accused multiple sellers, including Plaintiff, of selling counterfeit versions of [its products]," but that allegation is directly contradicted by the publication itself. (*Compare* FAC, ¶¶19-20 and Kozhedub Dec., ¶27.) Indeed, the word "counterfeit" is nowhere to be found.

If subjective reports to authorities are ruled to be actionable, it will chill the speech of any reporting party who then must fear that they will be sued for their candid, contemporaneous beliefs at the time of reporting (usually under exigent circumstances). Citizens would no longer feel safe on emergency calls with police regarding potential crimes. The public, including brand-holders and eye-witnesses, must be free to report suspected wrongdoing openly, especially where the reporting party asks the authority to "[p]lease investigate."

2. **The FAC Does Not Allege Falsity**

Plaintiff does not allege that any portion of the Investigation Request was false. Instead of focusing on the Investigation Request itself, Plaintiff employs a strawman. Specifically, Plaintiff mischaracterizes and reframes the Investigation Request as a "counterfeit goods report" that claimed Plaintiff's products were counterfeit, which is allegedly "patently false and entirely baseless" because "they were authentic Benicci products in authentic packaging." (FAC, ¶22.) Plaintiff's allegation is contradicted by the text of the Investigation Request itself, and its mischaracterization is improper.[5] *See DiCoby v. Syracuse Univ.*, 191 A.D.3d 425, 427 (1st Dep't

---

[5] To be sure, to the extent non-party Amazon loosely made reference to the Investigation Request as a "counterfeit claim," it cannot transform the actual statements made by Defendant, which control the inquiry. (FAC, ¶21.)

2021) (rejecting claim of defamation where "Plaintiff paraphrase[d] the [alleged publication] in his complaint and misstate[d] its contents."); *see also Zappin v. Daily News, L.P.*, 2017 U.S. Dist. LEXIS 125959, at *30-31 (S.D.N.Y. Aug. 9, 2017) (admonishing that "the FAC's quoted excerpt presents the quoted phrase out of context" and looking to the full context of the alleged defamatory publication.")

Tellingly, the FAC is careful not to tell the full story. It selects two out-of-context sentences from the alleged defamatory publication and hides the rest. (FAC, ¶¶19-20.) But "the New York Court of Appeals instructs that federal courts must construe the offending statement in the context of the entire statement or publication as a whole, and test it against the understanding of the average reader." *Supercom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, 2022 U.S. Dist. LEXIS 29184, at *6 (S.D.N.Y. Feb. 17, 2022) (*quoting Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985)).

Even out-of-context, however, the sentences merely discuss how in Benicci's past experience, sellers ***like*** Plaintiff (*i.e.*, that sold products through unauthorized, spurious listings) have utilized bait-and-switch tactics toward consumers. The FAC does not deny that sellers ***like*** Plaintiff (*i.e.*, that sold products through unauthorized, spurious listings) did in fact employ the bait-and-switch methods described by Defendant in its honest Investigation Request. Nor does the FAC deny that Plaintiff did not have Benicci's "permission to resell [its] product," which was the basis for Benicci asking Walmart to remove Plaintiff's listing. (*See* Kozhedub Dec., ¶27 ("Please remove them from our listing since they don't have our permission to resell our product.").)

### 3.   The Investigation Request Was Substantially True

Under New York law, it is "fundamental that truth is an absolute, unqualified defense to a civil defamation action." *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (citation omitted). If an allegedly defamatory statement is "substantially true," a claim of libel is "legally insufficient and . . . should [be] dismissed." *Id*. "A statement is substantially true if the

statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017).

Here, the FAC only contends that Plaintiff's **products** were authentic but does not – and cannot – claim that the **listing** Defendant complained about was authentic or authorized. It was not. Rather, it was a spurious and unauthorized listing. (Kozhedub Dec., ¶¶11-18.) For this reason too, the FAC does not allege falsity. In fact, Walmart would have made the same exact decision had Defendant simply uttered the last sentence of the Investigation Request, which is indisputably true, stating: "they don't have our permission to resell our product." And that's the gist of what Defendant was saying. Thus, the alleged publications are not actionably false.

### 4.   The FAC Does Not Allege Actual Damage

According to the FAC, the sole adverse action taken by **any** third-party as a result of the alleged defamatory publication is that "Plaintiff received an email notice from Walmart that Plaintiff's listing for the Swing Kit had been removed." (FAC, ¶21.) The FAC does not allege that Walmart precluded Plaintiff from selling (1) the Swing Kit under another listing, or (2) any other product on the Walmart Marketplace, whether Benicci products or otherwise. Moreover, the FAC does not allege that anyone confiscated Plaintiff's Swing Kit inventory or precluded Plaintiff's sale of its inventory of Swing Kits through any other source (or online platform) for the exact same inflated price (or more). In fact, the FAC does not allege that Plaintiff had ever even sold Benicci's Swing Kits on the Walmart Marketplace, as opposed to listing it for sale, or that it was likely to sell such units in the future. In sum, the FAC fails to allege any actual damage.

To sidestep this pleading deficiency, Plaintiff alleges that "Defendant's false statements regarding Plaintiff to Walmart were directed to the honesty and business character traits of Plaintiff and constitute defamation per se." (FAC, ¶39.) But Defendant did not impugn the honesty or business character of Plaintiff generally. Benicci merely reported suspected

wrongdoing with regard to specific listings. Under Plaintiff's argument, every consumer complaint to the Federal Trade Commission would qualify for defamation *per se* treatment. That is simply not the case.

Finally, Plaintiff is a limited-purpose public figure who injected itself into an issue of public concern by listing items for sale to the public under an unauthorized and spurious online listing, and thus Plaintiff is not eligible for presumed damages. *See Gertz v. Robert Welch*, 418 U.S. 323, 349 (1974).

### 5. The FAC Does Not Adequately Allege Constitutional Malice

New York State's "Anti-SLAPP" statute independently requires Plaintiff to prove actual malice, *i.e.*, to have "established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false." Civil Rights Law § 76-a(2) (as amended through Nov. 10, 2020). Although the FAC contains threadbare conclusions that "Defendant acted with actual malice" (FAC, ¶37), the substantive allegations do not make the case. Indeed, there is absolutely no pleaded basis for Defendant to have known its statements were false. The FAC expressly alleges that Plaintiff used an undisclosed "intermediary" to "source its inventory of Benicci products." (FAC, ¶¶4, 27.) Even accepting Plaintiff's mischaracterization of the Investigation Request, there was no way for Defendant to know that Plaintiff was reselling authentic goods. Instead, all the evidence, such as Plaintiff's creation and use of an unauthorized and spurious listing that misappropriated Defendant's intellectual property, supported Benicci's good-faith belief.

### 6. The FAC Does Not Allege Causation

The FAC explains that Plaintiff took its own listings down. (FAC, ¶¶18, 23.) To the extent Walmart took its Swing Kit listing down (*id*. at ¶21), it was due to Plaintiff's own failure to provide routine verification information to Walmart when requested. (*See id*. at ¶11; Kozhedub Dec., ¶36.) Similarly, Plaintiff failed to correct Ms. Tobin when she wrote to Plaintiff about its improper listing of Benicci's products online. (FAC, ¶17.) Thus, Plaintiff's damages, to

the extent they exist, are self-inflicted. At the very minimum, Plaintiff failed to mitigate its damages and therefore, its claims are barred.

### 7.   <u>The Statements at Issue Were Privileged</u>

#### i.   *Litigation Privilege*

"Under New York law (which governs the underlying defamation claim here), absolute immunity from liability for defamation exists for oral or written statements made . . . in connection with a proceeding before a court." *Brown v. Maxwell*, 929 F.3d 41, 52 (2d Cir. 2019). This so-called litigation privilege extends to quasi-judicial proceedings. *See Davis v. Power of Auth. of N.Y.*, No. 19-CV-792 (KMK), 2022 U.S. Dist. LEXIS 20126, at *58 (S.D.N.Y. Feb. 2, 2022); *see also Rosenberg v. Metlife, Inc.*, 8 N.Y.3d 359, 365 (2007). To that end, multiple courts have held that the Amazon notice and takedown procedures qualify as quasi-litigation procedures to which the litigation privilege applies. *See, e.g.*, *TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *23 (C.D. Cal. Mar. 23, 2020 ("the litigation privilege is intended to protect the sort of communication at issue here, the reporting of suspected wrongdoing to a party capable of halting or remedying it."); *TD Bank, N.A. v. Hill*, No. 12-7188 (RBK/JS), 2014 U.S. Dist. LEXIS 13519, at *21 (D.N.J. Feb. 3, 2014) (dismissing tortious interference counterclaim and finding complaints made to Amazon and other online retailers to be privileged). This reasoning applies equally to Defendant's reports to Walmart, which afforded both Plaintiff and Defendant with an opportunity to be heard and to provide evidence. (*See* FAC, ¶11; Kozhedub Dec., ¶36.)

Also, to the extent the Court finds that there is an actual justiciable controversy because Defendant's reports evinced an imminent threat of litigation, it must also for the same reason find that the same reports were made in anticipation of litigation and are thus subject to a qualified privilege under the pre-litigation privilege. *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 720 (2015) (ruling that pre-litigation letters were privileged).

*ii.    Self Interest/Common Interest Privileges*

"[A] statement is subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his or her own affairs, in a matter where his or her interest is concerned." *Front*, 24 N.Y.3d at 719. Benicci has an affirmative right and duty to police online marketplaces and report products that are potentially infringing its intellectual property, including its federally registered trademarks and copyrights. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 518 (S.D.N.Y. 2008) ("rights holders bear the principal responsibility to police their trademarks.") Benicci also has a right and duty to prevent third-parties from misappropriating its goodwill by creating false associations and endorsements. Benicci was simply acting in connection with this duty, which forecloses Plaintiff's claims.

Moreover, Walmart clearly has an interest in ensuring that infringing and unauthorized products are not sold on its platform, and that laws relating to copyright protection, misappropriation, false association, and unauthorized distribution of goods are complied with. Thus, Walmart and sellers like Benicci share a common interest, and the common interest privilege applies to communications made via the Walmart rights enforcement platform.

The aforementioned privileges should be the end of the inquiry as Plaintiff's claim is entirely premised on the privileged communications made to Walmart in an effort to stop Plaintiff's unlawful conduct while, at the same time, avoiding the need for protracted and expensive litigation.

(B)    **Plaintiff's Tortious Interference Claim Fails**

Plaintiff brings a claim for "[t]ortious interference [with] [p]rospective [b]usiness [r]elations." (FAC at pp. 8-9.) The claim fails for many reasons. Under New York law, a plaintiff making such a claim "must show the defendant's interference with business relations existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any other way improper." *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 69 (2d Cir. 2019). Importantly, where, as here, "the defendant's

interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *Id*.

First, as the Investigation Request makes clear, Defendant was merely policing and protecting its brand, and preventing harm to the public from the unauthorized and deceptive resale of its products through spurious listings. Although the FAC alleges, "Defendant's sole reason for making the false report was ostensibly to prevent resale of its products and thereby increase its sales," such a baseless and bald assertion is not entitled to credit. (FAC, ¶6.); *see RFP, LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 195 (S.D.N.Y. 2011). Indeed, Plaintiff's allegation is undermined by the FAC's concession that Plaintiff purchases its products from Defendant Benicci, meaning Benicci gets the sale regardless. (*Id*. at ¶¶4, 6, 27.)

Second, Defendant's tortious interference claim is based on and entirely derivative of its defamation claim. "Absent an independent source of harm, [a] tortious interference cause of action [must be] dismissed as duplicative because any economic damages derive from defamatory statements." *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.*, No. 17-cv-1674 (SJF) (ARL), 2021 U.S. Dist. LEXIS 64504, at *51 (E.D.N.Y. Mar. 31, 2021).

Third, Plaintiff fails to allege that Walmart terminated its relationship with Plaintiff. In fact, aside from closing only one unauthorized and spurious listing, Plaintiff's relationship with Walmart was entirely unaffected. *See RFP, LLC*, 788 F. Supp. 2d at 198 (rejecting tortious interference claim where there was no "breakdown" in the alleged interfered with business relationship).

Fourth, for the reasons mentioned above, Plaintiff suffered no actual damages, any damages were self-inflicted, and Defendant's statements were privileged.

### (C) **Plaintiff's Unfair Competition Claim Fails as a Matter of Law**

Plaintiff's unfair competition claim is also entirely derivative of its other claims. (*See* FAC, ¶¶58-61.) Thus, it must also fail. Moreover, Plaintiff must be confused as to the claim's application. New York recognizes only "two theories of common-law unfair competition: palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007).

Neither theory is remotely applicable as it pertains to Defendant's alleged conduct. Plaintiff's claim is frivolous. If anyone has this claim, it is Defendant.

## IV.    ATTORNEYS' FEES SHOULD BE AWARDED TO DEFENDANT

In this completely backwards action, the misappropriator sues the brand for exercising its right to petition a public forum (an online marketplace) to investigate wrongdoing, including wide-scale consumer deception. Accordingly, this case falls under New York's anti-SLAPP law (*see* N.Y. Civ. Rights Law § 76-a) and attorney's fees "***shall*** be recovered upon a demonstration, that the action . . . was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (*id*. at § 70-a(1)(a)). For any or all of the reasons mentioned above, Plaintiff's claims lack a substantial basis in fact and law. They were asserted to force Defendant into a quandary: spend many thousands of dollars on legal fees or capitulate to Plaintiff (*i.e.*, let a known misappropriator run amuck online and deceive consumers). This was no secret, Plaintiff declared:

> If you do not [withdraw your complaint] . . . we will commence a lawsuit against you to address the harms caused by your actions.
>
> **This is not an empty threat**.  Be advised that, if we commence a lawsuit, ***the lawsuit will not be withdrawn or settled without your payment of all of our attorney's fees***, costs and damages stemming from your actions.

(Kozhedub Dec., ¶38) (first bold emphasis in original); *see also id*. at ¶¶38-42.

Less than a week after this warning, Plaintiff filed suit. Less than a week is not sufficient time to conduct due diligence on the matters set forth in the Complaint, yet that's the time Plaintiff and its counsel gave this case. This was by design since Plaintiff and its affiliated entities filed nearly identical complaints in at least four different actions against brand-holders within about three months.[6] (Pollack Decl. at ¶7.) These suits are consistent with Plaintiff's

---

[6] *See Unlimited Cellular v. Copper Compression LLC*, 22-cv-01400-VB (S.D.N.Y. 2022); *CDC Newburgh Inc. v. STM Bags, LLC*, 22-cv-01597 (S.D.N.Y. 2021); *Unlimited Cellular v. Red Points Solutions SL*, 21-cv-10638-NSR (S.D.N.Y. 2021).

principal's *modus operandi* in filing nuisance suits across the country. (Pollack Decl., at ¶¶8-9.) "Plaintiff's attempted use of the threat of crippling legal fees to intimidate the Defendant . . . into complying with his demands, and his subsequent commencement of this meritless litigation, appear to be precisely the type of conduct against which New York's anti-SLAPP statute was designed to protect." *Harris v. Am. Accounting Ass'n*, No. 5:20-CV-01057 (MAD/ATB), 2021 U.S. Dist. LEXIS 226517, at *40 (N.D.N.Y. Nov. 24, 2021).

Accordingly, an award of attorney's fees is appropriate here.

## CONCLUSION

For any and all of the reasons stated herein, Defendant respectfully requests that this Court dismiss Plaintiff's FAC in its entirety and award Defendant its attorneys' fees.

Dated: July 26, 2022                    Respectfully Submitted,

                                        /s/ Steven Pollack
                                        Steven Pollack, Esq.
                                        POLLACK LAW, P.C.
                                        225 Broadway, Suite 850
                                        New York, NY 10007
                                        Telephone: (212) 765-5225
                                        Fax: (929) 529-8562
                                        Steve@stevepollacklaw.com

                                        *Counsel for Defendant Benicci, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2022, I served the foregoing via electronic mail on

Plaintiff's counsel of record:

> Jason B. Lattimore
> JASON B. LATTIMORE, ESQ. LLC
> 55 Madison Avenue, Suite 400
> Morristown, NJ 07960
> Telephone: (973) 998-7477
> Jason@LattimoreLaw.com

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 26, 2022                                  Respectfully submitted,

**POLLACK LAW, P.C.**

/s/ Steven Pollack
Steven Pollack, Esq.
POLLACK LAW, P.C.
225 Broadway, Suite 850
New York, NY 10007
Telephone: (212) 765-5225
Fax: (929) 529-8562
Steve@stevepollacklaw.com

*Counsel for Defendant Benicci, Inc.*