UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EXECUTIVE PARK PARTNERS LLC,

                       Plaintiff,

-against-

BENICCI INC.,

                       Defendant.

**OPINION & ORDER**

22-CV-02560 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Executive Park Partners LLC ("Plaintiff") commenced this action on March 29, 2022 against Benicci Inc. ("Defendant") alleging that Defendant falsely represented to Walmart that Plaintiff was selling counterfeit goods. (Doc. 1). Plaintiff's Second Amended Complaint—the operative pleading—presses four claims for relief: (i) a claim for declaratory judgment of non-infringement; (ii) a claim for common law defamation; (iii) a claim for common law tortious interference with prospective business relations; and (iv) a claim for common law unfair competition. (Doc. 20, "SAC").

    Pending before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).(Doc. 33). Pursuant to the briefing schedule set by the Court, Defendant filed its memorandum of law and declarations from Vladimir Kozhedub and Steven Pollack in support if its motion to dismiss (Doc. 34, "Def. Br."; Doc. 35 "Kozhedub Decl."; Doc. 36, "Pollack Decl."), Plaintiff filed its memorandum of law and declaration from Mendel Mendelovits in opposition (Doc. 39, "Pl. Br."; Doc. 40, "Mendelovits Decl."), and the motion was fully submitted with the filing of Defendant's reply. (Doc. 44, "Reply").

    For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

**BACKGROUND**

Defendant, a Florida corporation, sells a variety of goods online, including "art supplies, bath products, cooking products, shower filters, lights, and other items, including a Safe Tree Swing Hanging Kit." (SAC ¶¶ 10-11). Defendant "has no offices, employees, agents, phone numbers, property, bank accounts, operations, warehouses, inventory, or products in New York, and is not even authorized to do business in New York." (Kozhedub Decl. ¶ 2). Defendant sells its products under the BENICCI trademark, "for which Defendant owns a federal trademark registration (No. 6,106,857)." (SAC ¶ 12). Plaintiff, a New York limited liability company, purchases Defendant's products bearing the BENICCI mark and resells those products "using online retail websites such as Walmart and Amazon.com, which provide platforms for companies to sell their products to consumers." (*Id.* ¶¶ 1, 13). Plaintiff alleges that it "sourced the BENICCI products it offered for sale on Walmart through an intermediary located in New York that obtains the products directly from Defendant." (*Id.* ¶ 36).

Plaintiff alleges that on March 20, 2022, Defendant submitted a "a trademark infringement report to Walmart in which it accused sellers, including Plaintiff, of listing for sale inauthentic (i.e., counterfeit) versions of the Benicci Safe-Tree-Swing-Hanging-Kit ("Swing Kit") under the BENICCI trademark." (*Id.* ¶ 28). Defendant, in the report to Walmart, states that "[s]ellers like [Plaintiff] are shipping to buyers similar looking items, but they won't have our logo on the packaging, quality may be lower and the item they will ship will have different packaging as well." (Kozhedub Decl., Ex. E). Defendant further stated in the report to Walmart, "[p]lease remove them from our listing since they don't have our permission to resell our product." (*Id.*). On March 21, 2022, "Plaintiff received an email notice from Walmart that Plaintiff's listing for the Swing Kit had been removed because Defendant reported the product as being counterfeit." (*Id.* ¶ 29). Plaintiff alleges that Defendant's report to Walmart was "patently false and entirely baseless" and

that "Defendant did not conduct a test purchase of Plaintiff's products to determine whether they were authentic and otherwise had no basis for reporting to Walmart the products Plaintiff offered for sale were inauthentic." (*Id.* ¶ 31). "Had Defendant actually ordered the products, it would have seen that they were authentic BENICCI products in authentic BENICCI packaging, not the inauthentic products Defendant described to Walmart." (*Id.*). Plaintiff alleges that "[a]s a result of these false infringement reports, and out of fear that its account could be suspended or permanently terminated if Defendant filed additional infringement reports, Plaintiff removed all of its product listings for the authentic BENICCI items it had listed on Walmart." (*Id.* ¶ 31). Plaintiff further alleges that its listing for BENICCI products "have not been reinstated by Walmart." (*Id.* ¶ 34).

## STANDARD OF REVIEW

I.  Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[1] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "While a district court may refer to evidence outside the pleadings when resolving a 12(b)(1) motion, it is not invariably required to consider

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

3

such evidence." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022). "It is only where jurisdictional facts are placed in dispute that the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.*

II.  Rule 12(b)(2) Standard

"A party may move to dismiss an action for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Although it is a plaintiff's burden to establish jurisdiction in response to such a motion, "the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). At this stage, "[i]n order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) ("[T]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be factually supported."). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). The Court "may consider materials outside the pleadings" in analyzing a motion to dismiss under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

"Assessing whether Defendants are subject to specific long-arm personal jurisdiction— that is, jurisdiction based upon their contacts with the state—is a two-step process." *Yak v.*

4

*BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 WL 5505351, at *3 (S.D.N.Y. Sept. 10, 2020). "First, the Court must determine whether personal jurisdiction exists under New York's long-arm statute, C.P.L.R. § 302." *Id.* (citing *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)). "Second, if New York's particular requirements are satisfied, the Court 'analyze[s] whether personal jurisdiction comports with due process protections established under the Constitution.'" *Id.* (quoting *Eades*, 799 F.3d at 168).

### III. Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

IV. Documents Considered

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113; *see also MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 499 (S.D.N.Y. 2017) (a court may consider, in resolving a Rule 12(b)(1) motion to dismiss, "affidavits, exhibits and declarations, all subject to the familiar standards of admissibility found in Rule 56"). Similarly, in deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a district court "may determine the motion on the basis of affidavits alone." *Dorchester Fin. Sec.*, 722 F.3d at 84; *see also Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) ("On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.").

The Court may and does consider, for the purposes of evaluating subject matter jurisdiction and personal jurisdiction, the following declarations and exhibits attached thereto that were submitted to the Court in connection with Defendant's motion to dismiss: (i) the Declaration of Vladimir Kozhedub (Doc. 35); (ii) the Declaration of Mendel Mendelovits (Doc. 40). The Court considers these declarations and the exhibits attached only to the extent that they are relevant in assessing subject matter jurisdiction and personal jurisdiction.

**ANALYSIS**

I. Subject Matter Jurisdiction

Plaintiff—in addition to pressing common law claims for defamation, tortious interference, and unfair competition—seeks a declaratory judgment that its unauthorized resale of Defendant's

6

products did not infringe Defendant's BENICCI trademark. Plaintiff invokes federal question jurisdiction under the Lanham Act and is seeking a remedy under the Declaratory Judgment Act. (SAC ¶ 3). Plaintiff also invokes diversity jurisdiction. (*Id.*).

      A.      <u>Federal Question Jurisdiction</u>

"Federal courts may generally hear cases asking for declarations of trademark noninfringement." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18-CV-02442, 2022 WL 4280403, at *7 (S.D.N.Y. Sept. 15, 2022). A court must ask "whether the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020). This requires the plaintiff to "adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Id.* Even if a plaintiff seeking declaratory relief meets this burden, the Declaratory Judgment Act "vests a district court with discretion to exercise jurisdiction over a declaratory action." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021) (citing *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023) (noting that the Second Circuit has consistently interpreted the Declaratory Judgment Act to confer "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear"). In *Admiral Insurance*, the Second Circuit set forth six factors that "should inform a district court's exercise of such discretion":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to *res judicata*; (4) whether the use of a declaratory judgment would increase

> friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

57 F.4th at 99-100 (citing *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 105 (2d Cir. 2012)). District courts have "broad discretion to weigh the factors" enumerated in *Admiral Insurance*, and "no one factor is sufficient, by itself, to mandate that a district court exercise – or decline to exercise – its jurisdiction to issue a declaratory judgment." *Id.* at 100. "Likewise, these factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.*

The Court turns first to Plaintiff's burden of adequately alleging that it "has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Saleh*, 957 F.3d at 354. Plaintiff alleges that prior to filing this action, it was offering products bearing the BENICCI mark for sale and that those products were sold "in authentic BENICCI packaging." (SAC ¶ 30). Plaintiff further alleges that it "currently has inventory of BENICCI product purchased from Defendant both before and after this lawsuit was filed" but is "unable to offer this inventory for sale due to the threat of Defendant's reporting the product listing as infringing the BENICCI trademark." (SAC ¶ 37). Plaintiff has also submitted a declaration from its President, Mendel Mendelovits, stating that Plaintiff intends to sell this inventory of BENICCI products if it "can obtain an order from the court declaring that [Plaintiff's] sale of the product does not infringe Benicci's trademark." (Mendelovits Decl. ¶ 15). These allegations and representations make clear that Plaintiff has "a definite intent and apparent ability to commence use of" the BENICCI marks. *Saleh*, 957 F.3d at 354.

8

The Court next turns to whether it should exercise its broad discretion to refuse to exercise jurisdiction over Plaintiff's declaratory judgment claim. The first and second of the six factors enumerated by the Second Circuit in *Admiral Insurance* are relevant to the instant action. With respect to the first *Admiral Insurance* factor, the declaratory judgment sought by Plaintiff will not "serve a useful purpose in clarifying or settling the legal issues involved." 57 F.4th at 99. The decision in *Fossil Group Inc. v. Angel Seller, LLC* is instructive on this point. No. 20-CV-02441, 2021 WL 5409605 (E.D.N.Y. Aug. 27, 2021), *adopted by* 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021). The plaintiffs in *Fossil Group* alleged that defendants were selling counterfeit Michael Kors watches in their Amazon storefront, which infringed upon plaintiffs' trademark. *Id.* at *1. The defendants counterclaimed, seeking a nearly identical declaratory judgment to Plaintiff, that "they have not sold counterfeit Michael Kors Products" nor infringed on plaintiffs' "trademark rights or other rights, whether under Federal or State law." *Id.* at *10. The court noted that the defendants clearly "have no legal right to sell counterfeit products," and thus "the nature of the declaration Plaintiffs seek in this case," i.e., "a court determination that they did not sell counterfeit watches . . . [was] factual," not legal. *Id.*

Here, likewise, Plaintiff seeks what amounts to "a court determination that [it] did not sell counterfeit [BENICCI products]." *Id.* at *10. Whether the BENICCI products sold by Plaintiff were counterfeit "is not a legal issue for the court to declare, and thus declaratory judgment is not appropriate." *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, No. 20-CV-03702, 2022 WL 3586746, at *4 (E.D.N.Y. Aug. 22, 2022). Generally, courts use the nine *Polaroid* factors to analyze Lanham Act liability over the sale of counterfeit goods. *See Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-05826, 2015 WL 10906060 (E.D.N.Y. Nov. 6, 2015) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)), *aff'd sub nom. Abbott Labs. v. H&H Wholesale Servs., Inc.*,

9

670 F. App'x 6 (2d Cir. 2016). In the context of gray-market goods—"which use identical marks, are sold in the original packaging, and are obtained legitimately from the manufacturer"—those factors are "less helpful." *Id.* Courts instead find that gray-market goods are counterfeit in two situations. *Id.* First, "goods that are not intended for domestic sale and are materially different from domestic goods," and second, "goods sold in contravention of legitimate, established, substantial, and nonpretextual quality-control measures that the trademark holder follows, the sale of which will diminish the value of the mark." *Id.* Virtually every aspect of the determination that a product is counterfeit in the gray-market goods setting is fact-intensive, for example: whether the goods were sold in their original packaging, whether they were legitimately obtained from the manufacturer, whether they were intended for domestic sale, and whether the reseller followed the manufacturer's quality-control measures. Plaintiff itself acknowledges the factual nature of the declaratory relief it seeks when it alleges that it had not sold counterfeit goods because they were sold "in authentic BENICCI packaging." (SAC ¶ 30). As in *Fossil Group*, here too, the inquiry of whether Plaintiff sold counterfeit goods is factual, not legal, in nature. Furthermore, to the extent Plaintiff's declaratory judgment claim "seeks a declaration about past conduct, they are asking the Court to determine a negative — what did not happen in the past." *Fossil Grp.*, 2021 WL 5409605, at *10. To the extent the declaratory judgment claim touches upon whether Plaintiff will sell counterfeit BENICCI products at some point in the future, "such a determination would be entirely speculative." *Id.* "Neither of these requests are appropriate for declaratory relief." *Id.*

With respect to the second *Admiral Insurance* factor, the declaratory judgment Plaintiff seeks will not "finalize the controversy" nor will it "offer relief from uncertainty." 57 F.4th at 99. Plaintiff's requested declaratory relief does not remedy the principal harm Plaintiff identifies in this action: the removal of its product listings by Walmart. (SAC ¶ 29). Nor does it resolve

Plaintiff's common law claims for defamation, tortious interference, and unfair competition. Defendant further contends that that it "will not sell its products to Plaintiff, and Plaintiff's unauthorized resale of Defendant's products will continue to breach Defendant's terms of use." (Def. Br. at 13). Put simply, declaratory relief on the non-infringement of the BENICCI marks will not resolve or otherwise finalize the commercial dispute that underlies this lawsuit.

Accordingly, the Court finds that the first and second *Admiral Insurance* factors weigh against the exercise of jurisdiction and as such, the Court declines to exercise its jurisdiction to issue a declaratory judgment and likewise declines to hear the pendant state law claims.[2]

### B.    Diversity Jurisdiction

Plaintiff alternatively invokes diversity jurisdiction, alleging this Court "has jurisdiction over the claims alleged pursuant to 28 U.S.C. § 1332" and that the "amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties." (SAC ¶ 3). Complete diversity may or may not exist here between Plaintiff, a New York limited liability company, and Defendant, a Florida corporation, depending on the citizenship of each of Plaintiff-LLC's members. (SAC ¶¶ 1-2). In an action for a declaratory judgment, "the amount in controversy is measured by the value of the object of the litigation." *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020). The "object of the litigation" in this case is Plaintiff's ability to continue to resell products bearing the BENICCI mark. Defendant argues that Plaintiff has failed to meet the amount in controversy because "Plaintiff sold, if anything, less than $100 [worth] of Benicci Swing Kit product before its unauthorized, spurious listing was found and taken down." (Def. Br. at 13). Defendant's estimate of the amount in controversy is based on the "number

---

[2] To the extent Plaintiff seeks injunctive relief, that injunctive relief request is associated only with Plaintiff's common law claims and not with the claim for declaratory judgment of non-infringement under the Lanham Act. (SAC ¶¶ 55, 65, 68).

11

of customer reviews versus number of products offered for sale, and other publicly available information" on Plaintiff's product listings. (Kozhedub ¶ 34). Plaintiff argues, in response, that it seeks "an order compelling Defendant to retract its report to Walmart, thereby removing negative account information that could be critical to the status of the entire account" which it further argues is "sufficient to satisfy the jurisdictional threshold." (Pl. Br. at 13). Plaintiff offers no analysis of the value of the object of the litigation beyond the conclusory allegations that the amount-in-controversy exceeds $75,000, and as such, has failed to meet its burden to affirmatively show by a preponderance of the evidence that it has surpassed the jurisdictional threshold. *See Waiting Room Sols. v. Excelsior Ins. Co.*, No. 19-CV-07978, 2020 WL 5505386, at *5 (S.D.N.Y. Sept. 9, 2020) ("the party asserting jurisdiction bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."). Where the amount-in-controversy is challenged at this stage in the proceeding, Plaintiff must come forward with some evidence of its damages sufficient to satisfy the Court that Plaintiff has met the jurisdictional threshold.

Plaintiff has failed to meet its burden of showing that the amount in controversy exceeds $75,000 and this Court therefore does not have diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Additionally, Plaintiff has failed to establish, as is its obligation, the diverse citizenship of the parties hereto. Plaintiff has failed to establish subject matter jurisdiction—either federal question or diversity jurisdiction—over its claims and as such, the Court grants Plaintiff's motion to dismiss pursuant to Rule 12(b)(1) and dismisses the Second Amended Complaint.

II.  Personal Jurisdiction

In any event, and separately, Plaintiff's claims are dismissed for the reason that the Court lacks personal jurisdiction over Defendant. Plaintiff argues that personal jurisdiction exists over

Defendant in New York pursuant to CPLR § 302(a)(1) because "Plaintiff sourced the BENICCI products through an intermediary located in New York that has the products delivered to New York through Defendant's interactive websites." (Pl. Br. at 9-13). New York's long-arm statute, CPLR § 302(a) provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Courts in this district have repeatedly held that CPLR § 302(a)(1) does not provide a basis for personal jurisdiction under virtually identical facts. *See Common Cents Distribs., LLC v. CURLS Beauty Brands, LLC*, No. 20-CV-10369, 2021 WL 4226182 (S.D.N.Y. Sept. 15, 2021); *Modellbahn Ott Hobbies, Inc. v. Velcro USA, Inc.*, No. 20-CV-03526, 2021 WL 2012950 (S.D.N.Y. May 20, 2021); *Real Selling Grp. LLC v. ESN Grp., Inc.*, No. 20-CV-01468, 2021 WL 535748 (S.D.N.Y. Feb. 12, 2021). In *Real Selling Group*, plaintiff's claims were based on alleged complaints made by the defendant to Amazon concerning the sale of counterfeit versions of the defendant's product. 2021 WL 535748, at *5-6. The court dismissed for lack of personal jurisdiction, holding that the defendant's "sales through its websites are clearly insufficient for the exercise of personal jurisdiction, as [plaintiff's] claims do not arise from these sales." *Id.* at *6. "Here, [plaintiff's] claims arise out of alleged complaints made by [defendant] to Amazon (located in Washington) concerning [plaintiff's] own sales activities. [Defendant's] sales in New York have nothing to do with these claims." *Id.* The plaintiff in *Modellbahn Ott Hobbies* alleged "that the various defendants published intellectual property complaints with Amazon falsely alleging that the products plaintiff was selling were counterfeit." 2021 WL 2012950, at *1. The court dismissed for lack of personal jurisdiction because "[t]he only act alleged to have been committed by [defendant] was the publishing of intellectual property complaints with Amazon against [p]laintiff alleging the products it was selling were counterfeit."

13

*Id.* In *Common Cents Distributors*, plaintiff alleged that defendant "induced Amazon to restrict [p]laintiff's ability to sell its products throughout the United States . . . by repeatedly representing to Amazon that Plaintiff was listing and selling counterfeit [] products." 2021 WL 4226182, at *1. The court dismissed for lack of personal jurisdiction because there was "no articulable nexus between the defendant's sales in New York and the plaintiff's claims, which arose out of complaints about counterfeiting that were made by a California [d]efendant to Amazon in Washington." *Id.*

Plaintiff's claims arise out of alleged complaints made by Defendant (a Florida corporation) to Walmart (a Delaware corporation with its principal place of business in Arkansas).[3] Like in *Common Cents*, *Real Selling*, and *Mondellbahn*, here too there is no articulable nexus between Defendant's sales in New York and Plaintiff's claims. Plaintiff attempts to distinguish *Common Cents*, *Mondellbahn*, and *Real Selling* by arguing that the allegedly counterfeit products in those cases were not "sourced directly from the defendant." (Pl. Br. at 12). The source of the products however, is not relevant to the personal jurisdiction inquiry. Defendant's allegedly tortious activity, which took place outside of New York, and Plaintiff's claim based thereon simply "did not arise from the [D]efendant's specific business transactions in New York." *Common Cents Distribs.*, 2021 WL 4226182, at *4. Plaintiff has failed to make a *prima facie* showing that personal jurisdiction exists. Accordingly, the Court holds that New York's long-arm statute does not

---

[3] The Court can and does take judicial notice that Walmart's state of incorporation is Delaware and that its principal place of business is in Arkansas based on Walmart's most recent Form 8-K filed with the Securities Exchange Commission ("SEC"). Walmart Inc., Company Information, May 18, 2023 Form 8-K, https://www.sec.gov/edgar/browse/?CIK=0000104169 (last visited May 19, 2023); *see McDonnell v. AMC Ent. Holdings Inc.*, No. 20-CV-05378, 2022 WL 3274166, at *1 n.2 (S.D.N.Y. Aug. 11, 2022) (taking judicial notice of state of incorporation and principal place of business based on SEC filings) (collecting cases); *Mira v. Kingston*, 218 F. Supp. 3d 229, 235 n.3 (S.D.N.Y. 2016) (same).

provide a basis for personal jurisdiction over Defendant and as such grants Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

### III.     Defendant's Request for Attorneys' Fees

Finally, Defendant seeks an award of attorneys' fees pursuant to Section 70-a of New York's anti-SLAPP statute. (Def. Br. at 31-32). In November 2020, New York amended its anti-SLAPP statute "to expand protections for defendants facing meritless lawsuits, including mandatory shifting of attorneys' fees." *Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 489 (S.D.N.Y. 2021); *see also* N.Y. Civ. Rights Law § 70-a. Section 70-a of New York's amended anti-SLAPP statute allows a defendant to recover "damages, including costs and attorney's fees," by bringing a motion to dismiss pursuant to CPLR 3211(g), which "shall be granted" unless the plaintiff demonstrates that the cause of action had a "substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a (citing N.Y. CPLR 3221(g)).

Plaintiff opposes Defendant's request for attorneys' fees, arguing that Section 70-a does not apply in federal court "because they conflict with federal procedure and pleading standards." (Pl. Br. at 24). The Court agrees. "Courts in this district have held that § 70-a is inapplicable in federal court because its substantial basis standard articulated in New York's anti-SLAPP law conflicts with the standards under Federal Rules of Civil Procedure 12 and 56." *Prince v. Intercept*, No. 21-CV-10075, 2022 WL 5243417, at *18 (S.D.N.Y. Oct. 6, 2022) (collecting cases). Accordingly, Defendant's request for costs and attorneys' fees is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction is GRANTED.[4]

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 33 and close this case.

**SO ORDERED.**

Dated: White Plains, New York
May 31, 2023

*(signature)*

PHILIP M. HALPERN
United States District Judge

---

[4] "The court is powerless to proceed to an adjudication" on whether Plaintiff has stated a claim for relief under Rule 12(b)(6) given the Court's holding that it lacks personal jurisdiction and subject matter jurisdiction over this action. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."). The Court therefore may not and does not consider Defendant's arguments under Rule 12(b)(6).